## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------x

In re:

DESOTO OWNERS, LLC,

Chapter 11
Case No.  20-43387 (JMM)

Debtor.

---------------------------------------------------------x

In re:

DESOTO HOLDING, LLC,

Chapter 11
Case No.  20-43388 (JMM)

Debtor.

---------------------------------------------------------x

## FIFTH AMENDED JOINT PLAN OF LIQUIDATION

NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION OF THE PLAN PROPONENTS OR ANY OTHER PARTY IN INTEREST.  YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THIS PLAN FOR ANY PURPOSE PRIOR TO THE CONFIRMATION OF THIS PLAN BY THE BANKRUPTCY COURT.  THIS PLAN IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER CUSTOMARY CONDITIONS.  THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES.

NUTOVIC &ASSOCIATES
Isaac Nutovic, Esq.
261 Madison Avenue, 26th Floor
New York, New York 10036
Tel.: (212) 789-3100

*Attorneys for Debtors,*
*Desoto Owners LLC*
*Desoto Holding LLC*

Dated:  August 11, 2021

## JOINT PLAN OF LIQUIDATION

## INTRODUCTION

This Fifth Amended Joint Plan of Liquidation ("Plan") is proposed by the Debtors to the creditors and Interest Holders to resolve the debts that were owed by the Debtors on the date of the filing of their respective Chapter 11 petition.

The Plan undertakes to resolve all secured claims, administrative and other priority claims, and unsecured claims, as well as all equity interests in the Debtors. The Debtors believe that Distribution pursuant to the terms of this Plan will produce for creditors more than they would receive if the Chapter 11 Cases were to be converted and the assets of Debtors were to be liquidated under Chapter 7 of the Bankruptcy Code and the proceeds distributed according to the priorities and in the manner prescribed by the Bankruptcy Code. Reference is made to the Disclosure Statement accompanying the Plan for a discussion of the Debtors' history, business, properties, and risk factors, a summary and analysis of the Plan, and certain related matters. The Debtors are the proponents of the Plan within the meaning of Section 1129 of the Bankruptcy Code.

ALL CREDITORS ARE ENCOURAGED TO READ THE PLAN AND THE ACCOMPANYING DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019, AND THE PLAN, THE DEBTORS RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.

## ARTICLE I

## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

A.    **Defined Terms**.

The following terms when used in the Plan and in the accompanying Disclosure Statement shall, unless the context otherwise requires, have the following meanings, respectively:

1.1.    *"Administrative Claim"* means a Claim under Section 503(b) of the Bankruptcy Code that is entitled to priority under Section 507(a)(1) of the Bankruptcy Code, for costs or expenses of administration of the Debtors' Chapter 11 Cases, including, without limitation, any actual and necessary expenses of operating the business of the Debtors or preserving the Debtors' estates, and any and all fees and expenses of Professionals retained by the Debtors to the extent allowed by the Bankruptcy Court under Sections 330, 331 or 503 of the Bankruptcy Code other than real property taxes on the Mall Property accrued in favor of Manatee County which have become unavoidable liens on the Mall Property.

1.2.    *"Admin/GUC Reserve"* means the $650,000 reserve of Cash funded by the one or both of the ML Parties, maintained in a designated escrow account by counsel for the Debtors, and distributed in accordance with this Plan, for the benefit of (i) Holders of Allowed Administrative Claims and U.S. Trustee fees in the amount of $610,000. and (ii) Holders of General Unsecured Claims in the amount of $40,000.

1.3.    *"Administrative Claims Bar Date"* means the date by which all Administrative Claims must be filed with the Bankruptcy Court to be an Allowed Claim. The Administrative Claims Bar Date will

be established by the Bankruptcy Court as a specific date prior to the Confirmation Date. *"Administrative Claims Cap"* means $610,000 which amount shall be funded by one or both of the ML Parties into the Admin/GUC Reserve.

1.4.     *"Affiliate"* shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

1.5.     *"Allowed Administrative Claim"* means all or that portion of any Administrative Claim that has been or becomes an Allowed Claim by Order of the Bankruptcy Court.

1.6.     *"Allowed Claim"* or **"***Allowed [      ] Claim"* means with respect to any Claim, except as otherwise provided herein: (a) a Claim that is evidenced by a Proof of Claim timely Filed by the applicable Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or a Final Order of the Court a Proof of Claim is not or shall not be required to be Filed); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely filed; or (c) a Claim Allowed pursuant to the Plan, any stipulation approved by the Court, any contract, instrument, indenture, or other agreement entered into or assumed in connection with the Plan, or a Final Order of the Court; provided, that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Court, or if such an objection is so interposed, such Claim shall have been Allowed by a Final Order.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim or Interest is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Court.  Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes.  For the avoidance of doubt, a Proof of Claim Filed after the applicable Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim.  "Allow" and "Allowing" shall have correlative meanings.

1.7.     *"ATCF"* means ATCF II Florida-A LLC, the holder of Claim #3 in the Desoto Owners Chapter 11 Case.

1.8.     *"Auction Contract"* means the contract signed by the Winning Bidder and Desoto Owner for the purchase of the Mall Property.

1.9.     *"Auction Date"* means the date scheduled by the Bankruptcy Court for an auction of the Mall Property, which shall occur no later than October 4, 2021.

1.10.     *"Auction Sale"* means the sale of the Mall Property in accordance with the bidding and sale procedures fixed by the Bankruptcy Court pursuant to the Sale Motion.

1.11.     *"Bankruptcy Code"* shall mean the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq., and all amendments thereto which are applicable to the Debtors' Chapter 11 Cases.

1.12.     *"Bankruptcy Court"* means the United States Bankruptcy Court for the Eastern District of New York, Brooklyn Division, or such other court as may hereafter have jurisdiction over an action with respect to the Chapter 11 Cases.

1.13.     *"Bankruptcy Rules"* means: (a) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under section 2075 of Title 28, United States Bankruptcy Code; (b) the Federal Rules of Civil Procedure, as amended and promulgated under Section 2072 of Title

28, United States Bankruptcy Code; (c) any local rules applicable to the Bankruptcy Court; and (d) any standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Debtors' Chapter 11 cases or proceedings therein, as the case may be.

1.14.    *"Bar Date"* means, with respect to any particular Claim, the specific date established by the Bankruptcy Court as the last date by which Proofs of Claim must be Filed in the Chapter 11 Cases for that specific claim.

1.15.    *"Bidding Procedures"* means the bidding procedures approved by the Court through the Sale Motion for the sale of the Mall Property.

1.16.    *"Business Day"* means a day other than a Saturday or a Sunday or any other day on which the majority of commercial banks located in New York, New York are required or authorized to close.

1.17.    *"Cash"* means currency of the United States of America, or checks issued in accordance with this Plan payable in such currency.

1.18.    *"Causes of Action"* means any claims, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, in tort, law, equity, or otherwise.  Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims on contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code.

1.19.    *"CBRE"* means CBRE, Inc., the Debtors' real estate broker who will market the Mall Property pursuant to its retention agreement and the Bidding Procedures.

1.20.    *"Chapter 11 Case"* means when used with reference to the Debtors, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

1.21.    *"Chapter 11 Cases"* means, collectively, the Chapter 11 Case for each Debtor.

1.22.    *"Claim"* shall have the meaning set forth in Section 101(5) of the Bankruptcy Code, and any Cause of Action or liability asserted against a Debtor.

1.23.    *"Claims Register"* means the official register of Claims maintained by the Clerk of the Bankruptcy Court.

1.24.    *"Class"* means such classes of Claims or Interests which are substantially similar to the other Claims or Interests in such class as classified pursuant to the Plan.

1.25.    *"Closing Date"* means the date on which the Sale of the Mall Property closes.

1.26.    *"Collateral"* means any property or interest in property in the Estates subject to a Lien to secure the payment or performance of a Claim.

3

1.27.    *"Conditional Stay Relief Order"* means the *Order Granting TIG Romspen US Master Mortgage, LP Relief from the Automatic Stay*, entered by the Bankruptcy Court on August 4, 2021 and appearing at Docket No. 212 in the Chapter 11 Case of Desoto Owners and Docket No. 113 in the Chapter 11 Case of Desoto Holding

1.28.    *"Confirmation Date"* means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the official docket maintained by such Clerk of the Bankruptcy Court in the Debtor's Chapter 11 case, within the meaning of Bankruptcy Rules 5003 and 902.

1.29.    *"Confirmation Hearing"* means the hearing at which the Bankruptcy Court shall consider the Debtors' request for an order confirming the Plan in accordance with applicable provisions of the Bankruptcy Code.

1.30.    *"Confirmation Order"* shall mean the order of the Bankruptcy Court, *inter alia*, confirming the Plan in accordance with the provisions of the Bankruptcy Code and which is in form and substance satisfactory to the Debtors, Romspen and Hudson's.

1.31.    *"Creditor"* shall have the meaning as set forth in Section 101(1) of the Bankruptcy Code.

1.32.    *"Debtors"* means, collectively, Desoto Holding LLC and Desoto Owners LLC.

1.33.    "*Desoto Holding*" means Desoto Holding LLC, debtor and debtor in possession under case no. 20-43388 (JMM).

1.34.    "*Desoto Owners*" means Desoto Owners LLC, debtor and debtor in possession under case no. 20-43387 (JMM).

1.35.    *"Disallowed*" means, with respect to any Claim, a Claim or any portion thereof that:  (a) has been disallowed by a Final Order; (b) is Scheduled as zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law or the Plan; (c) is not Scheduled and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law or the Plan; (d) has been withdrawn by agreement of the applicable Debtor and the Holder thereof; or (e) has been withdrawn by the Holder thereof.

1.36.    *"Disclosure Statement"* means the Disclosure Statement for the Fifth Amended Joint Plan of Liquidation, dated August 13, 2021, respecting the Plan, as approved by the Bankruptcy Court as containing adequate information in accordance with Section 1125 of the Bankruptcy Code, all exhibits and annexes thereto and any amendments or modifications thereof.

1.37.    "*Disclosure Statement Order*" means the order entered by the Bankruptcy Court approving the Disclosure Statement.

1.38.    *"Disputed Claim"* means a Claim against a Debtor which is subject to a pending objection, but has not been disallowed by a Final Order of the Bankruptcy Court.

1.39.    *"Distribution"* means the distribution to the Holders of Allowed Claims in accordance with the terms of the Plan.

4

1.40.    "*Distribution Record Date*" means the date for determining which Holders of Claims are eligible to receive Distributions hereunder and shall be the Effective Date or such other date as may be designated by the Bankruptcy Court in the Confirmation Order.

1.41.    "*Effective Date*" means the date on which all conditions precedent set forth in Section 10.01 hereof have been satisfied.

1.42.    "*Entity*" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

1.43.    "*Estate*" means, as to each of the Debtors, the estate created for that Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

1.44.    "*Estates*" means, collectively, the Estate of each Debtor.

1.45.    "*Exculpated Party or Parties*" means collectively, and in each case in its capacity as such: the Debtors, each such entity's directors, managers, officers, each as of the Petition Date, employees, attorneys, and other professionals, each in their capacity as such.

1.46.    "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in a Chapter 11 Case with the Bankruptcy Court or, with respect to the filing of a Proof of Claim or proof of Interest, the Clerk of the Bankruptcy Court.

1.47.    "*Final Order*" means (i) an order or judgment of the Bankruptcy Court, as entered on the docket in any Chapter 11 Case (or any related adversary proceeding or contested matter) or the docket of any other court of competent jurisdiction, or (ii) an order or judgment of any other court having jurisdiction over any appeal from (or petition seeking certiorari or other review of) any order or judgment entered by the Bankruptcy Court (or any other court of competent jurisdiction, including in an appeal taken) in the Chapter 11 Case (or in any related adversary proceeding or contested matter), in each case that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired according to applicable law and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; provided, that the possibility a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules of the Bankruptcy Court, may be filed relating to such order shall not prevent such order from being a Final Order.

1.48.    "*General Unsecured Claim*" means any Claim, other than (a) an Administrative Claim, (b) a Secured Claim or (c) a Priority Tax Claim.

1.49.    "*Guaranties*" means, collectively, the Lebovits Guaranty and the ML Estate Guaranty.

1.50.    "*Guaranty Claims*" means claims arising from the Guaranties.

1.51.    "*Holder*" means an Entity holding a Claim or Interest, as applicable.

1.52.    "*Hudson's*" means Hudson's Furniture Showroom, Inc.

5

1.53.    *"Hudson's Lease"* means that certain Lease and Purchase Option, dated January 10, 2014 between Hudson's and Desoto Square Mall LLC, which shall be assumed and assigned to the Winning Bidder pursuant to the Sale Order.

1.54.    *"Impaired"* means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.55.    *"Interest(s)"* means any and all equity interests, ownership interests or shares in a Debtor issued by that Debtor prior to the Petition Date (including, without limitation, all capital stock, stock certificates, common stock, preferred stock, partnership interests, membership and other interests in a limited liability company, rights, options, warrants, contingent warrants, convertible or exchangeable securities, investment securities, subscriptions or other agreements and contractual rights to acquire or obtain such an interest or share in that Debtor, partnership interests in that Debtor's stock appreciation rights, conversion rights, repurchase rights, redemption rights, dividend rights, preemptive rights and liquidation preferences, puts, calls or commitments of any character whatsoever relating to any such equity, ownership interests or shares of capital stock of that Debtor or obligating that Debtor to issue, transfer or sell any shares of capital stock) whether or not certificated, transferable, voting or denominated "stock" or a similar security, and any Claim or Cause of Action related to or arising from any of the foregoing.

1.56.    *"Lebovits Guaranty"* means that certain Guaranty, dated as of March 17, 2017, by Meyer Lebovits for the benefit of Romspen.

1.57.    *"Lien"* means any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of a Debtor but only to the extent that such interest is recognized as valid by a court of competent jurisdiction if the validity or scope of such interest is challenged by any party with standing to bring such a challenge.

1.58.    *"Mall Property"* means that certain real property located at 303 US Highway 301 Boulevard West Bradenton, Florida 34205.

1.59.    *"ML Estate"* means ML Estate Holdings, LLC, a New York limited liability company.

1.60.    *"ML Estate Guaranty"* means that certain Guaranty, dated as of March 17, 2017, by ML Estate for the benefit of Romspen.

1.61.    *"ML Parties"* means, collectively, ML Estate Holdings, LLC and Meyer Lebovits.

1.62.    *"MTAG"* means MTAG as Custodian for Caz Creek Florida V LLC, the holder of Claim #11 filed in the Desoto Owners Chapter 11 Case.

1.63.    *"Order"* means a determination, decree, adjudication, or judgment issued or entered by the Bankruptcy Court or other court of competent jurisdiction.

1.64.    *"Person"* shall have the meaning as set forth in Section 101(41) of the Bankruptcy Code.

1.65.    *"Petition Date"* means September 22, 2020, the date on which the Debtors commenced their Chapter 11 Cases.

1.66.    *"Plan"* means this Fifth Amended Joint Plan of Liquidation, as same may be amended or modified from time to time in accordance with the terms hereof or in accordance with the Bankruptcy Code.

1.67.    *"Plan Proponents"* means the Debtors.

1.68.    *"Priority Tax Claim"* means an Allowed Claim which is entitled to priority pursuant to Section 507(a)(7) of the Bankruptcy Code.

1.69.    *"Professional"* means an Entity employed pursuant to a Bankruptcy Court order in accordance with sections 327, 328 or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code, subject to the Administrative Claims Cap.

1.70.    "*Professional Fee Claims*" means all Administrative Claims for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Effective Date to the extent such fees and expenses have not been previously paid.  Professional Fee Claims shall be subject to the Administrative Claims Cap.

1.71.    *"Property"* means all assets or property of the Debtors' respective estates of any nature whatsoever, real or personal, tangible or intangible, including contract rights, accounts and Causes of Action, previously or now owned by either of the Debtors, or acquired by the Debtors' Estates, as defined in Section 541 of the Bankruptcy Code.

1.72.    "*Proof of Claim*" means a proof of Claim Filed in the Chapter 11 Cases.

1.73.    *"Pro Rata Share"* means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

1.74.    *"Representative"* means with respect to a particular person, its affiliates, and any director, officer, member, equity holder, owner, manager, employee, agent, consultant, advisor, and/or other representative of that person and/or its affiliates, including, but not limited to, legal counsel, accountants and financial advisors.

1.75.    *"Romspen"* means TIG Romspen US Master Mortgage, LP, its predecessors, successors, and assigns.

1.76.    *"Romspen Claim"* means, collectively, the Romspen Secured Claim and the Romspen Deficiency Claim.

1.77.    *"Romspen Deficiency Claim"* means that portion of the Claim asserted by Romspen consisting of the difference between the Romspen Secured Claim and the aggregate recovery of Romspen from the liquidation and/or sale of Romspen's Collateral through the Auction Sale.

1.78.    *"Romspen Secured Claim"* means that portion of the Claim asserted by Romspen to the extent of the value of Romspen's interest in Collateral to secure such Claim.

1.79.    *"Sale Hearing"* means the hearing at which the Bankruptcy Court shall consider the Debtors' request for an order approving the sale of the Mall Property to the Winning Bidder.

1.80.    *"Sale Motion"* means the motion filed by the Debtors to sell the Mall Property, subject to higher and better offers, at the Auction Sale.

1.81.    *"Secured"* means when referring to a Claim: (a) secured by a Lien on property in which the Debtor has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the applicable Holder's interest in a Debtor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to the Plan, or separate order of the Bankruptcy Court, as a secured claim.

1.82.    *"U.S. Trustee"* shall have the same meaning ascribed to it in 28 U.S.C. § 581, *et seq.* and, as used in the Plan, refers to the office of the United States Trustee for Region 2.

1.83.    *"Unimpaired"* means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that are unimpaired within the meaning of section 1124 of the Bankruptcy Code, including through payment in full in Cash.

1.84.    *"Unsecured Claim"* means a claim for which the Claimant does not hold a valid, perfected and enforceable Lien, against either of the Debtors or the Debtors' Estates; or (b) a right to setoff to secure the payment of such Claim.  An Unsecured Claim includes, but is not limited to, a Claim for damages resulting from rejection of any Executory Contract pursuant to Section 365 of the Bankruptcy Code, and does not include administrative or priority claim

1.85.    *"Winning Bidder"* means the Person whose bid for the Mall Property is accepted by the Debtors and approved by the Bankruptcy Court at the Sale Hearing. In the event the Winning Bidder does not close on the sale of the Mall Property in accordance with the terms approved by Bankruptcy Court pursuant to the Sale Motion, any subsequent bidder approved by the Bankruptcy Court shall be deemed the Winning Bidder for purposes of this Plan.

### B.    Rules of Interpretation.

For purposes herein:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (7) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (8) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (9) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (10) all references to docket numbers of documents Filed in the Chapter 11 Case are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (11) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Case, unless otherwise stated; and (12) any immaterial effectuating provisions may be interpreted by the Debtors in such a manner

that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

**C.**    **Computation of Tim**e. Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

**D.**    **Governing Law**. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

**E.**    **Reference to Monetary Figures**. All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

**F.**    **Controlling Document**. In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

**G.**    **Exhibits**. All Exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full herein, regardless of when filed.

## ARTICLE II

## PROVISIONS FOR PAYMENT OF ALLOWED
## ADMINISTRATIVE AND PRIORITY TAX CLAIMS

2.01    <u>Generally</u>.  Allowed Administrative Claims and Priority Tax Claims are not classified in this Plan, and have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof. The treatment of and consideration to be received by Holders of Allowed Administrative Claims and Allowed Priority Tax Claims pursuant to this Article II of the Plan shall be in full and complete satisfaction, settlement, and release of such Claims.  The Debtor's obligations in respect of such Allowed Administrative and Priority Tax Claims shall be satisfied in accordance with the terms of this Plan.

2.02    <u>Administrative Claims</u>.  Administrative Claims include Claims under section 503(b) of the Bankruptcy Code that are entitled to priority under section 507(a)(1) of the Bankruptcy Code, for costs or expenses of administration of the Chapter 11 Case, including, without limitation, any actual and necessary expenses of operating the business of the Debtors or preserving their Estates, and any and all fees and expenses of Professionals to the extent allowed by the Bankruptcy Court under sections 330, 331 or 503 of the Bankruptcy Code. Each Holder of an Allowed Administrative Claim shall be paid from the Admin/GUC Reserve on the latest of:  (a)  the Effective Date if such Administrative Claim is Allowed as of the Effective Date; (b) the date such Administrative Claim is Allowed or as soon as reasonably practicable thereafter; and (c) the date such Allowed Administrative Claim becomes due and payable, or as soon thereafter as is reasonably practicable; <u>provided</u>, that Allowed Administrative Claims that arise in the ordinary course of a Debtor's business shall be paid in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements and/or arrangements governing, instruments evidencing, or other

9

documents relating to such transactions.  Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim Allowed by Final Order.

Allowed Administrative Claims shall share *pro rata* in the Admin/GUC Reserve after all U.S. Trustee Fees have been paid and shall be entitled to further payment only if Romspen's Allowed Claims are paid in full or are paid from proceeds of assets not subject to Romspen's liens.

Except as otherwise provided in this Article II and except with respect to Administrative Claims that are Professional Fee Claims, requests for payment of Allowed Administrative Claims must be Filed and served on the Debtors pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date. ***Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their Property and such Administrative Claims shall be deemed discharged as of the Effective Date.*** Objections to such requests, if any, must be Filed and served on the Debtors and the requesting party by the deadline established for such objections under Section 8.01 of the Plan.

2.03    <u>Priority Tax Claims</u>.  Priority Tax Claims constitute Claims of the kind specified in section 507(a)(8) of the Bankruptcy Code.

Allowed Priority Tax Claims shall be paid, at the election of the Debtors, in full, with statutory interest within five (5) Business Days after the Closing Date of the Auction Sale of the Mall Property.  If Romspen is the Winning Bidder at the Auction Sale, it shall advance these funds at the closing.

2.04    <u>Professional Compensation</u>. All final requests for payment of Professional Fee Claims incurred during the period from the Petition Date through the Effective Date shall be Filed no later than twenty (20) days after the Effective Date.  All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior orders of the Bankruptcy Court, and once approved by the Bankruptcy Court, shall be promptly paid.

2.05    <u>Statutory Fees</u>. All fees and interest due and payable pursuant to section 1930 of Title 28 of the United States Code before the Effective Date, shall be paid promptly after the Effective Date. The Debtors shall File with the Bankruptcy Court post-confirmation quarterly reports in a form reasonably acceptable to the U.S. Trustee.  Each Debtor shall remain obligated to pay quarterly fees and interest to the U.S. Trustee until the earliest of such Debtor's Chapter 11 Case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

## ARTICLE III

## <u>DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS</u>

A.    <u>**Summary of Classification**</u>.

Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Interests. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of the Class and is classified in a different Class to the extent the Claim or Interest qualifies within the description of that different Class. A Claim or Interest is placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent

that such Claim or Interest is an Allowed Claim or an Allowed Interest in that Class and such Claim or Interest has not been paid, released, settled or otherwise satisfied prior to the Effective Date.

A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. Except as otherwise provided in this Plan, a Claim or Interest also is classified in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied before the Effective Date. All Claims against and Interests in a Debtor, of whatever nature, whether or not scheduled, liquidated or unliquidated, absolute or contingent, including all claims arising from transactions with that Debtor or rejection of executory contracts and all Interests arising from the ownership of the stock or other membership interests in a Debtor, whether resulting in an Allowed Claim or not, shall be bound by the provisions of this Plan.

**B.    Class Identification**.

The Claims and Interests, other than Administrative Claims and Priority Tax Claims, are hereby classified as follows:

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | MTAG Secured claim | Unimpaired | Not Entitled to Vote |
| 2 | ATCF Secured Claim | Unimpaired | Not Entitled to Vote |
| 3 | Romspen Secured Claim | Impaired | Entitled to Vote |
| 4 | Hudson's | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| 6 | Interests in Desoto Owners LLC | Impaired | Deemed to Reject |
| 7 | Interests in Desoto Holding LLC | Impaired | Deemed to Reject |

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Class of Interests, are Impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversies.

**ARTICLE IV**

**TREATMENT OF IMPAIRED CLAIMS**
**AND INTERESTS UNDER THE PLAN**

4.01    _Generally_.  Subject to Article VII hereof, each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtors and the Holder of such Allowed Claim or Allowed Interest, as applicable. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of the Effective Date and the date such Holder's Claim or Interest becomes an Allowed Claim or Allowed Interest or as soon as reasonably practicable thereafter.

4.02    Class 1 – _MTAG's Secured Claim_.  The Class 1 Secured Claim is Unimpaired and not entitled to vote on the Plan. MTAG's Allowed Secured Claim shall paid in full on the Effective Date from the proceeds of the Auction Sale.

4.03    Class 2 – ATCF's Secured Claim.   The Class 2 Secured Claim is Unimpaired and not entitled to vote on the Plan. ATCF's Allowed Secured Claim shall paid in full on the Effective Date from the proceeds of the Auction Sale.

4.04    Class 3 – Romspen Secured Claim.   The Class 3 Claim is Impaired and entitled to vote on the Plan. Until such time as its Allowed Claim is paid in full, Romspen shall receive all of the proceeds of the Auction Sale remaining after payment of (i) the Class 1 Allowed Claim; (ii) the Class 2 Allowed Claim (iii) any pre-petition or post-petition claim which has become an unavoidable lien on the Mall Property, (collectively, the "Senior Secured Claims") until Romspen's Allowed Claim is paid in full. Romspen's credit bidding rights under 11 U.S.C. § 363(k) shall be unimpaired, except as may be limited by written agreement between the Debtors and Romspen.  To the extent that Romspen is the Winning Bidder at the Auction Sale, Romspen shall pay the Senior Secured Claims on the Closing Date.  The Romspen Secured Claim is an Allowed Claim and any amounts paid thereon shall reduce the Guaranty Claims by such amount.

4.05    Class 4 – Allowed Hudson's Claim. The Class 4 Unsecured Claim is Impaired and entitled to vote on the Plan. Hudson's Lease shall  be assumed and assigned to the Winning Bidder pursuant to the Sale Order, with the purchase option contained in Article 43 thereof being deemed valid and enforceable and the Mall Property being transferred subject to such option.  Hudson's claim under the Plan shall be treated as Impaired by virtue of a waiver of its cure claim.  Upon the Sale Order becoming a Final Order, Hudson's shall waive its cure claim and its claim shall be treated as fully satisfied under the Plan.  Any post–assumption and assignment breach by the Winning Bidder shall not result in any claim against either Estate.

4.06    Class 5 – Allowed General Unsecured Claims.  Class 5 is Impaired. Holders of Allowed Class 5 Claims are entitled to vote to accept or reject the Plan.

Each Holder of a Class 5 Allowed General Unsecured Claim shall receive in full and final satisfaction, compromise, settlement, release, and discharge of each such Allowed Claim, its *Pro Rata* Share of $40,000.00 to be funded exclusively by the Admin/GUC Reserve, except that the Romspen Deficiency Claim shall not be satisfied, compromised, settled, released or discharged hereunder and Romspen's rights against (i) both Debtors under the Loan Agreement, and (ii) the ML Parties with respect to the Guaranties, are preserved in all respects and shall survive confirmation of the Plan, the closing of the Chapter 11 Cases and/or the conversion of these cases to cases under Chapter 7 of the Bankruptcy Code.  The Romspen Deficiency Claim is an Allowed Claim and any amounts paid thereon shall reduce the Guaranty Claims by such amount. Each Allowed Class 5 Claim shall be paid 10 days after the Closing Date or such later date as such claim becomes an Allowed Claim. In addition, if any of the proceeds realized from the sale of the Mall Property remain after the Romspen Claims, Administrative Expense, Priority, and other Secured Claims are paid in full, such proceeds shall be distributed *pro rata* to the holders of Allowed Class 5 Claims.

4.07    Class 6 – Interests in Desoto Owners LLC.  Class 6 is Impaired and deemed to reject the Plan.  Holders of Interests in Desoto Owners LLC shall receive no distribution under the Plan. On the Effective Date any certificate, share, note, bond, indenture, purchase right, or other instrument or document, directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest, equity, or portfolio interest in Desoto Owners or any warrants, options, or other securities exercisable or exchangeable for, or convertible into, debt, equity, ownership, or interests in Desoto Owners giving rise to any Claim or Interest shall be canceled and deemed surrendered as to Desoto Owners.

4.08    Class 7 – Interests in Desoto Holding LLC.  Class 7 is Impaired and deemed to reject the Plan.  Holders of Interests in Desoto Holding LLC shall receive no distribution under the Plan. On the Effective Date any certificate, share, note, bond, indenture, purchase right, or other instrument or document, directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest, equity, or portfolio interest in Desoto Holding or any warrants, options, or other securities exercisable or

12

exchangeable for, or convertible into, debt, equity, ownership, or interests in Desoto Holding giving rise to any Claim or Interest shall be canceled and deemed surrendered as to Desoto Holding and shall not have any continuing obligations thereunder..

## ARTICLE V

## MEANS FOR EXECUTION AND
## IMPLEMENTATION OF THE PLAN

5.01    <u>General Settlement of Claims</u>.  Except as otherwise set forth herein, pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, the Estate, and Holders of Claims and Interests and is fair, equitable, and reasonable.  In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Debtors may compromise and settle Claims against a Debtor or its Estate and Causes of Action held by the Debtors against other Entities.  For the avoidance of doubt, the settlement of Claims under the Plan shall have no impact on the Guaranty Claims, other than that any Distributions on account of the Romspen Claims shall reduce the total amount of the Guaranty Claims in the amount of such Distributions.

5.02    <u>Transfer of Property and Distribution of Proceeds</u>. Desoto Owners or the Debtors  shall file the Sale Motion on or before August 19, 2021 seeking Bankruptcy Court approval of bidding and auction sale procedures for the Mall Property, including the scheduling of the Auction Sale and approval of the Winning Bidder at the Sale Hearing. On the Closing Date the Mall Property will be transferred to the Winning Bidder, subject to the assignment of the Hudson's Lease in accordance with the Plan, the Bidding Procedures, and the Sale Order.  The sale proceeds from these transfers will be used to fund, to the extent such proceeds are available, the following payments required under the Plan in the following order of priority: (i) CBRE's fees as such may be approved by the Bankruptcy Court; (ii) prepetition and post-petition claims which have become unavoidable liens on the Mall Property, including the Allowed Claims of Class 1 and Class 2 creditors and those of Manatee County for unpaid 2020 and 2021 real estate taxes; (iii) Romspen's Allowed Claims; (iv) U.S. Trustee fees (v) Allowed Administrative Claims and (vi) Class 5 Claims.  The Mall Property shall be marketed according to the bidding and sale procedures approved by the Bankruptcy Court in accordance with the Sale Motion.

5.03.    <u>Settlement of Claims Against Insiders</u>. In exchange for a release of all claims held by the Debtors against the ML Parties, the ML Parties shall fund the Admin/GUC Reserve in the amount of $650,000 to pay (i) Class 5 Allowed Claims in the amount of $40,000.00. (ii) U.S. Trustee Fees; and then (iii) Allowed Administrative Claims subject to the Administrative Claims Cap.

5.04    <u>Exemption from Certain Transfer Taxes and Fees</u>. To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any transfer of the Mall Property  pursuant to this Plan (including the portion occupied by Hudson's) and any mortgage or instrument recorded in connection with such transfer shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local

13

governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

## ARTICLE VI

## TREATMENT OF EXECUTORY
## CONTRACTS AND UNEXPIRED LEASES

6.01    <u>General Rejection of Executory Contracts</u>. With the exception of Hudson's Lease, the Plan constitutes and incorporates a motion by the Debtors, in accordance with Section 365 of the Bankruptcy Code, to reject any executory contract and/or unexpired lease.

6.02    <u>Rejection Damage Claims</u>.  Proofs of Claims with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Bankruptcy Court within the latest to occur of: (1) 30 days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection; and (2) 30 days after notice of any rejection that occurs after the Effective Date.  **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease that are not Filed within such time will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, their Estates, or property of the foregoing parties, without the need for any objection by the Debtors, or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary**.  Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of the Plan.

## ARTICLE VII

## PROVISIONS GOVERNING DISTRIBUTIONS

7.01    <u>Timing and Calculation of Amounts to Be Distributed</u>. Unless otherwise provided in the Plan, on the Effective Date (or, if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes Allowed or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim or Interest (or such Holder's affiliate) shall receive the full amount of the distributions that the Plan provides for Allowed Claims and Interests in each applicable Class.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII of the Plan.  Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

7.02    <u>Delivery of Distributions in General</u>. Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims, except as otherwise provided in this Article VII, shall be made to Holders of record as of the Distribution Record Date by the Debtors:  (1) to the signatory set forth on any of the Proof of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed or if the Debtors have been notified in writing of a change of address); (2) at the addresses set forth in any written notices of address changes delivered to the Debtors after the date of any related Proof of Claim; (3) at the addresses reflected in the Schedules if no

14

Proof of Claim has been Filed and the Debtors has not received a written notice of a change of address; or (4) on any counsel that has appeared in the Chapter 11 Case on such Holder's behalf. Subject to this Article VII, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan. The Debtors shall not incur any liability whatsoever on account of any distributions under the Plan except for gross negligence or willful misconduct.

7.03    <u>Unclaimed Property</u>.  Any Holder of an Allowed Claim that does not assert a Claim pursuant to this Plan for an undeliverable or unclaimed distribution within 60 days after the first distribution is made to such Holder shall be deemed to have forfeited its claim for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting any such claim for the undeliverable or unclaimed distribution against the Debtors, the Estates, or their respective properties or assets.  In such cases, any Cash or other property held by the Debtors on account of such claims for undeliverable or unclaimed distributions, shall become the property of Debtors notwithstanding any federal or state escheat laws to the contrary. The Debtors and their respective agents and attorneys are under no duty to take any action to attempt to locate any Claim Holder.

7.04    <u>Compliance With Tax Requirements</u>. In connection with the Plan, to the extent applicable, the Debtors shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Debtors shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Debtors each reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances. Property deposited into the various Claim distribution accounts described elsewhere in the Plan (including the Priority Claims Reserve) will be subject to disputed ownership fund treatment under section 1.468B-9 of the United States Treasury Regulations. All corresponding elections with respect to such accounts shall be made, and such treatment shall be applied to the extent possible for state, local, and non-U.S. tax purposes.  Under such treatment, a separate federal income tax return shall be filed with the IRS with respect to such accounts, any taxes (including with respect to interest, if any, or appreciation in property between the Effective Date and date of distribution) imposed on such accounts shall be paid out of the assets of such accounts (and reductions shall be made to amounts disbursed from such accounts to account for the need to pay such taxes).

7.05    <u>Fractional Cents</u>. Any other provision of this Plan to the contrary notwithstanding, no payment of fractions of cents will be made. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.

7.06    <u>Payments of Less than One Hundred Dollars</u>.  If a Cash payment otherwise provided for by this Plan with respect to an Allowed Claim or Interest would be less than one hundred dollars ($100.00) (whether in the aggregate or on any payment date provided in this Plan), notwithstanding any contrary provision of this Plan, the Debtors shall not be required to make such payment.

7.07    <u>Setoffs</u>.  Except as otherwise provided for herein, the Debtors, may, but shall not be required to, set off against any Claim and the payments to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Debtor or its estate may have against the Creditor, but neither the failure to do so nor the allowance of a Claim hereunder shall constitute a waiver or release by the Debtor or its estate of any Claim it may have against the Creditor.

15

7.08    _Allocations_. Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest as Allowed herein.

7.09    _No Postpetition Interest on Claims_. Unless otherwise specifically provided for in an order of the Bankruptcy Court, the Plan, or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any such Claim.

7.10    _Sections 506(c) and 552(b)_.  The Debtors shall be deemed to have waived, and Romspen shall be deemed to have received a waiver of, (a) the provisions of section 506(c) of the Bankruptcy Code, and (b) any "equities of the case" exception under section 552(b) of the Bankruptcy Code.

## ARTICLE VIII

## PROCEDURES FOR RESOLVING AND TREATING
## CONTESTED AND CONTINGENT CLAIMS AND INTERESTS

8.01    _Objections to Claims_.  The Confirmation Order shall provide that from and after the Effective Date only the Debtors shall have authorization to file and/or prosecute objections to Claims and/or Interests. Objections to Claims shall be filed with the Bankruptcy Court and served upon the affected Creditor(s) or Interest Holder(s) no later than one hundred twenty (120) days after the Effective Date; _provided_, _however_, that this deadline may be extended by the Bankruptcy Court upon motion of the Debtors. Unless an Order of the Bankruptcy Court specifically provides for a later date, any Proof of Claim or proof of Interest filed after the Confirmation Date shall be automatically Disallowed as a late filed claim, without any further action by the Debtors or the Debtors being required, unless and until the party filing such Claim obtains the written consent of the Debtors to file such Claim or Interest late or obtains an Order of the Bankruptcy Court upon notice to the Debtors and Debtors that permits the late filing of the Claim or Interest, in which event, the Debtors and the Debtors shall have one hundred twenty (120) days from the date of such written consent or Order to object to the allowance of such Claim, which deadline may be extended by the Bankruptcy Court upon consent of the Holder of such late Claim or on motion of the Debtors, without notice or a hearing. Subject to Bankruptcy Court approval, objections to Claims and/or Interests may be litigated by the Debtors to judgment, settled or withdrawn, in their respective discretion.

8.02    _No Distribution Pending Allowance_. Notwithstanding any other provision of the Plan, no payments or Distributions shall be made with respect to all or any portion of a Disputed Claim or Disputed Interest unless and until all objections to such Disputed Claim or Disputed Interest have been determined by a Final Order of the Bankruptcy Court.

8.03    _Reserve for Allocated Distributions_. The Debtors shall withhold from the property to be distributed under the Plan an amount which shall be sufficient to be distributed on account of such Disputed Claim(s). As to any Disputed Claim, upon a request for estimation by the Debtors, and/or Debtors, as the case may be, the Bankruptcy Court shall determine what amount is sufficient to withhold.

8.04    _Distributions after Allowance_.  Payments and Distributions to each Holder of a Disputed Claim, to the extent such Disputed Claim ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan governing the Class of Claims to which the subject Claim belongs.

16

8.05    <u>Treatment of Contingent, Disputed and Unliquidated Claims</u>. Until such time as a contingent, unliquidated or Disputed Claim becomes fixed, liquidated, absolute, and Allowed, such claim shall be treated as a Disputed Claim for purposes related to estimations, allocations, and Distributions under the Plan.

8.06    <u>Preservation of Rights</u>. Except to the extent that any Claim is Allowed during the Chapter 11 cases or expressly by this Plan, or the Confirmation Order, nothing, including, but not limited to, the failure of the Debtors, to object to a Claim or Interest for any reason during the pendency of the Chapter 11 Case, shall affect, prejudice, diminish or impair the rights and legal and equitable defenses of the Debtors with respect to any Claim or Interest, including, but not limited to, all rights of the Debtors to contest or defend themselves against such Claims or Interests in any lawful manner or forum when and if such Claim or Interest is sought to be enforced by the Holder thereof.

8.07    <u>Estimation of Claims</u>. Before, on, or after the Effective Date, either of the Debtors, may (but is not required to) at any time request that the Bankruptcy Court estimate any Claim pursuant to applicable law other than the Claims of Romspen and Hudson's, including, without limitation, pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any such Claim, including during the litigation of any objection to any Claim or during the pendency of any appeal relating to such objection. Notwithstanding any provision to the contrary in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any Claim, such estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions and discharge) and may be used as evidence in any supplemental proceedings, and the Debtors and Debtors may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before seven (7) days after the date on which such Claim is estimated. Each of the foregoing Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

8.08    <u>Disallowance of Claims</u>. Any Claims held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Estate by that Entity have been turned over or paid to the Debtors. Except as otherwise provided herein or as agreed to by the Debtors, any and all Proofs of Claim Filed after the Bar Date shall be deemed Disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless such late Proof of Claim has been deemed timely Filed by a Final Order.

8.09    <u>Amendments to Claims</u>. On or after the Effective Date, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Debtors, and any such new or amended Claim Filed shall be deemed Disallowed in full and expunged without any further notice to or action, order, or approval of the Bankruptcy Court to the maximum extent provided by applicable law.

17

## ARTICLE IX

## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

9.01    Compromise and Settlement of Claims, Interests, and Controversies. Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have, or any distribution to be made on account of such Allowed Claim or Allowed Interest, other than with respect to the Romspen Deficiency Claim.  Except as provided herein, the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, the Estate, and Holders of Claims and Interests and is fair, equitable, and reasonable.  In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Debtors may compromise and settle any Claims and Causes of Action held by the Debtors against other Entities.

9.02    Term of Injunctions or Stays. Unless otherwise provided in the Plan, the Confirmation Order or the Conditional Stay Relief Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.  To the extent of any inconsistency between the Conditional Stay Relief Order and the Confirmation Order the Conditional Stay Relief Order shall control.

9.03    Exculpation.  Notwithstanding anything contained in the Plan to the contrary, no Exculpated Party shall have or incur liability for, and each Exculpated Party is released and exculpated from, any Cause of Action or any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, or filing of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Disclosure Statement, the Chapter 11 Case, solicitation of votes on the Plan, the pursuit of confirmation, the pursuit of consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, and, except with respect to the Debtors' court-approved attorneys pre-Petition Date conduct related solely to the formulation, preparation, negotiation, or filing of the Plan and the Disclosure Statement, solely with respect to the time period from the Petition Date through the Effective Date, except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

The Exculpated Parties have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes on, and distribution of consideration pursuant to, the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above

18

does not release or exculpate any Claim relating to any pre-Petition Date or post-Effective Date obligations of any party (except with respect to the Debtors' court approved attorneys pre-Petition Date conduct for the acts and omissions described above) or Entity under the Plan, or any document, instrument, or agreement executed to implement the Plan.

For the avoidance of doubt, the exculpation contained in the Plan shall have no impact on the Guaranty Claims or the pre-Petition Date transfer of the equity interests in Desoto Owners to Desoto Holding.

## ARTICLE X

## CONDITIONS TO EFFECTIVENESS OF THE PLAN

10.01    Conditions Precedent to the Effective Date. It shall be a condition to Consummation of the Plan that the following conditions shall have been satisfied:

1.    The Confirmation Order shall have been duly entered and in full force and effect by no later than September 20, 2021;

2.    The Auction Sale shall have concluded by no later than October 4, 2021;

3.    The Winning Bidder shall have closed on the Auction Contract by no later than October 15, 2021; and

4.    The Admin/GUC Reserve shall have been fully funded by no later than the Confirmation Hearing.

10.02    Effect of Failure of Condition. The Debtors, with the express written consent of Romspen, which consent may be withheld for any reason ,may at any time, without notice or authorization of the Bankruptcy Court, waive or modify any condition set forth in Section 10.01 above.  The waiver or modification of any of these conditions shall not abridge or have any impact on Romspen's ability to exercise its rights under the Conditional Stay Relief Order.

10.03    Substantial Consummation. "Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

## ARTICLE XI

## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

11.01    Modification of Plan. Modifications of the Plan may be proposed in writing by the Debtors at any time before Confirmation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Debtors shall have complied with section 1125 of the Bankruptcy Code. The Plan may be modified at any time after Confirmation and before its substantial consummation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under section 1129 of the Bankruptcy Code. A Holder of a claim or Interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such Holder changes its previous acceptance or rejection. Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not

19

require additional disclosure or resolicitation under Bankruptcy Rule 3019.

11.02    <u>Revocation of the Plan</u>.  The Debtors reserve the right to revoke and withdraw the Plan prior to entry of the Confirmation Order.  If the Debtors revoke or withdraw the Plan, or if Confirmation of the Plan does not occur, then the Plan shall be deemed null and void.  In order to effectuate a revocation of the Plan, the Debtors shall file a notice of such revocation with the Bankruptcy Court and serve a copy on all parties entitled to notice.

## ARTICLE XII

## <u>RETENTION OF JURISDICTION</u>

12.01    Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Cases and all matters arising out of or related to the Chapter 11 Cases and the Plan, including jurisdiction to:

1.    Allow, Disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims;

2.    Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals;

3.    Resolve any matters related to:  (a) the assumption or rejection of any Executory Contract or Unexpired Lease and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, cure amounts pursuant to section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (b) amending, modifying, or supplementing, after the Effective Date, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed and assigned or rejected or otherwise; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.    Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.    Adjudicate, decide, or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.    Adjudicate, decide, or resolve any and all matters related to Causes of Action;

7.    Adjudicate, decide, or resolve any and all matters related to sections 1141 and 1145 of the Bankruptcy Code;

8.    Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement, including, without limitation, arising under or in connection with the Asset

20

Sale Transaction;

9.     Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code, including the Sale Order;

10.    Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11.    Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

12.    Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, discharges, releases, injunctions, exculpations, and other provisions contained in Article X hereof and enter such orders as may be necessary or appropriate to implement or enforce such releases, injunctions, and other provisions;

13.    Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to the Plan;

14.    Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15.    Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, or the Confirmation Order;

16.    Adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

17.    Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18.    Determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.    Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

20.    Hear and determine all disputes involving the existence, nature, or scope of the release provisions set forth in the Plan;

21.    Enforce all orders previously entered by the Bankruptcy Court in these cases, including but not limited to the Conditional Stay Relief Order;

22.    Hear any other matter not inconsistent with the Bankruptcy Code; and

23.    Enter an order closing either Chapter 11 Case.

**ARTICLE XIII**

21

## **GENERAL PROVISIONS**

13.01    Immediate Binding Effect.  Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtor, as applicable, and any and all Holders of Claims or Interests (regardless of whether such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with a Debtor.  All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

13.02    Additional Documents. On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or advisable to effectuate and further evidence the terms and conditions of the Plan.  The Debtors, all Holders of Claims and Interests receiving distributions pursuant to the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

13.03    Reservation of Rights. Before the Effective Date, neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by the Debtors with respect to the Plan, the Disclosure Statement, or the Confirmation Order shall be or shall be deemed to be an admission or waiver of any rights with respect to any Claims or Interests.

13.04    Notices.  Any notice required or permitted to be provided to the Debtors under the Plan shall be in writing and served by (i) email at inutovic@nutovic.com and (ii) either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery or (c) reputable overnight courier service, freight prepaid, to be addressed as follows:

> If to either of Desoto Owners LLC or Desoto Holding LLC:
> Nutovic & Associates
> 261 Madison Avenue, 26th Floor
> New York, N.Y. 10016

13.05    Saturday, Sunday or Legal Holiday.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

13.06    Severability.  If any term or provision of the Plan is held by the Bankruptcy Court prior to or at the time of Confirmation to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as so altered or interpreted.  In the event of any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan may, at the Debtors' option, remain in full force and effect and not be deemed affected.  However, the Debtors reserve the right not to proceed to Confirmation or consummation of the Plan if any such ruling occurs. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

13.07    <u>Votes Solicited in Good Faith</u>. Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and, pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code, and, therefore, neither any of such parties or individuals nor the Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan.

13.08    <u>Waiver and Estoppel</u>. Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured, or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed before the Confirmation Date.

13.09    <u>Exhibits</u>. All exhibits attached hereto are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above.

{Signatures on page following}

23

Desoto Owners LLC

By: /s/ *Meyer Lebovits*
Meyer Lebovits, Managing Member

Desoto Holding LLC

By:   /s/ *Meyer Lebovits*
Meyer Lebovits, Managing Member

Nutovic & Associates
Counsel to the Debtors

By: /s/*Isaac Nutovic*
          Isaac Nutovic
41321013v2

24